IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON


CLAYTON LAMONT HOWARD,                    CV 02-6255-BR

        Plaintiff,                        OPINION AND ORDER

v.

DIANE REA, MICHAEL WASHINGTON,
CINDY HANNERS, Oregon Board of
Parole; DR. ROBERT STUCKEY,
Psychiatrist; GARY FIELD, Ph.D.,

        Defendants.


**CLAYTON LAMONT HOWARD**
SID No. 5838277
2605 State Street
Salem, OR  97310

        Plaintiff, *Pro Se*

**HARDY MYERS**
Attorney General
**KATHRYN A. COTTRELL**
Assistant Attorney General
Department of Justice
1162 Court Street NE
Salem, OR 97301
(503) 378-6313

        Attorneys for Defendants

1 - OPINION AND ORDER

**BROWN, Judge.**

This matter comes before the Court on Defendants' Motion for Summary Judgment (#87) and Plaintiff's Motion for Summary Judgment (#102). For the following reasons, the Court **GRANTS** Defendants' Motion and **DENIES** Plaintiff's Motion.

## BACKGROUND

Plaintiff Clayton Lamont Howard is an inmate at the Oregon State Penitentiary (OSP). According to Defendant Diane Rea, Chair of the Oregon Board of Parole, Plaintiff is "serving a twenty-year sentence for a February 23, 1982, Rape I conviction . . . . [Plaintiff] began serving this prison sentence on March 1, 1995, consecutive to a previous Rape I conviction . . . in 1982." On April 2, 2001, Defendant Dr. Robert Stuckey prepared and submitted a psychological evaluation of Plaintiff to the Oregon Board of Parole and Post-Prison Supervision (Board) pursuant to Or. Rev. Stat. § 144.223.[1] Dr. Stuckey diagnosed

_____

[1] Or. Rev. Stat. § 144.223 provides in pertinent part:

> (1) The State Board of Parole and Post-Prison Supervision may require any prisoner being considered for parole to be examined by a psychiatrist or psychologist before being released on parole.
> (2) Within 60 days after the examination, the examining psychiatrist or psychologist shall file a written report of the findings and conclusions of the psychiatrist or psychologist relative to the examination with the chairperson of the State

Plaintiff with a "mixed personality disorder with narcissistic, aggressive, and paranoid tendencies" and noted medical treatment does not exist for this disorder because it is an "anti-social, learned behavior, rather than a mental illness." Dr. Stuckey concluded Plaintiff's test results were "elevated and alarming" and Plaintiff "has little victim empathy, little remorse." Dr. Stuckey also noted Plaintiff is "apt to engage in much denial and projection of blame and responsibility with subsequent rationalization and self-justification." Dr. Stuckey concluded Plaintiff has a "present severe emotional disturbance such as to constitute a danger to the health and safety of the community."

On May 23, 2001, the Board held a hearing regarding Plaintiff's projected release date to determine whether Plaintiff suffered from a "present severe emotional disturbance such as to constitute a danger to the health and safety of the community." Defendants Board Vice Chair Michael Washington and Board members Cindy Hanners and Diane Rea were present at the hearing. The Board concluded Plaintiff was a danger to the community and, pursuant to Or. Rev. Stat. § 144.125(3)[2] and OAR 255-060-0012,[3]

---

Board of Parole and Post-Prison Supervision.

[2] Or. Rev. Stat. § 144.125 provides in pertinent part:

> If the board finds the prisoner has a present severe emotional disturbance such as to constitute a danger to the health or safety of the community, the board may order the postponement of the scheduled parole release until a specified future

deferred Plaintiff's parole date for twenty-four months to September 14, 2003.

Plaintiff requested review of the Board's decision. On review, Washington found the Board "did not violate any rules, policies, or statutes, or constitutions" and denied Plaintiff's request for relief.

On July 10, 2001, Plaintiff filed a grievance in which he complained no treatment was available to him for "present severe emotional disturbance." Defendant Gary Field, Ph.D., administrator of OSP Counseling and Treatment Services, responded

_____

date.

[3] OAR 255-060-0012 provides in pertinent part:

    (1) Pursuant to ORS 144.125, the Board may order
    any available psychiatric/psychological report(s)
    from the Department of Corrections.
    (2) Pursuant to ORS 144.223, the Board may
    postpone the parole release date administratively
    and order a psychiatric/psychological evaluation
    of any inmate anytime prior to release.
    (3) After review of the psychiatric/psychological
    reports, and all other information or documents
    presented during the hearing the Board may defer
    parole release until a specified future date upon
    finding:
        (a) The inmate has a present severe emotional
    disturbance, such as to constitute a danger to the
    health or safety of the community.
    (4) The Board shall not deny release on parole
    solely because of an inmate's present severe
    emotional disturbance. The Board must also find
    the condition constitutes a danger to the health
    or safety of the community.

to the grievance and explained "present severe emotional disturbance" describes an antisocial behavior rather than a mental illness. Dr. Field noted mental-health treatment is not considered appropriate for antisocial behavior in the professional opinion of the Counseling Treatment Services at OSP. Dr. Field also stated the OSP Counseling and Treatment Services considers cognitive restructuring and drug and alcohol programs, which were available to Plaintiff, to be more effective. On October 2, 2002, Plaintiff appealed Dr. Field's response. Assistant Director Scott Taylor affirmed Dr. Field's response and denied Plaintiff's appeal.

On December 13, 2002, Frank Colistro, licensed psychologist, prepared and submitted to the Board an evaluation of Plaintiff. Dr. Colistro diagnosed Plaintiff with an antisocial personality disorder and opined Plaintiff's condition is severe "rendering him an ongoing threat." Dr. Colistro also opined Plaintiff has a high likelihood of "recidivating in a violent sexual manner."

On March 26, 2003, the Board held a hearing to determine Plaintiff's projected release date. Rea was present, Plaintiff appeared by video, and Washington and Hanners reviewed a videotape of the hearing before Rea, Hanners, and Washington met to deliberate.

On May 15, 2003, the Board deferred Plaintiff's parole release date to September 14, 2005. The Board found Plaintiff

continued to have a "present severe emotional disturbance that constitutes a danger to the health and safety of the community."

On May 31, 2003, Plaintiff requested review of the Board's decision. Washington denied Plaintiff's request for relief. On October 2, 2003, Plaintiff filed a petition for judicial review, which the Oregon Court of Appeals denied on April 13, 2004.

On September 18, 2002, Plaintiff filed a Complaint in this Court. On June 5, 2003, Plaintiff filed an Amended Complaint alleging Or. Rev. Stat. §§ 144.223 and 144.125(3) and OAR 255-060-0012 violate the Americans with Disabilities Act (ADA), 42 U.S.C. § 12132; the Rehabilitation Act, 29 U.S.C. § 794(a); and Title VI of the Civil Rights Act of 1964, 42 U.S.C. 2000d. Plaintiff, pursuant to 42 U.S.C. § 1983, also alleges these Oregon statutes and the administrative rule violate his First, Eighth, and Fourteenth Amendment rights.

Plaintiff seeks injunctive relief against Defendants Washington, Rea, Hanners and Field and requests the Court to: (1) declare the "Boards [*sic*] term-Language" in Or. Rev. Stat. § 144.125(3) and OAR 255-060-0012 are unconstitutional; (2) declare Or. Rev. Stat. § 144.125(3) and OAR 255-060-0012 are unconstitutional; (3) vacate the Board's May 23, 2001, and May 2, 2003, orders as unconstitutional; (4) vacate Stuckey's April 2, 2001, psychological evaluation as unconstitutional; (5) enjoin

all Board-contracted psychiatrists or psychologists from using the phrase, term, or diagnosis that Plaintiff has a "present severe emotional disturbance such as to constitute a threat to the health or safety of the community"; (6) require Field to provide program services to Plaintiff; and (7) enjoin the Board of Parole from using the phrase "present severe emotional disturbance."  Plaintiff also seeks damages against Defendant Stuckey.

On July 9, 2004, Defendants moved for summary judgment on all of Plaintiff's claims.  On February 17, 2005, Plaintiff filed a response to Defendant's Motion and a Motion for Summary Judgment on all of his claims against Defendants.

## STANDARDS

Fed. R. Civ. P. 56(c) authorizes summary judgment if no genuine issue exists regarding any material fact and the moving party is entitled to judgment as a matter of law.  The moving party must show the absence of an issue of material fact.  *Leisek v. Brightwood Corp.*, 278 F.3d 895, 898 (9th Cir. 2002).  In response to a properly supported motion for summary judgment, the nonmoving party must go beyond the pleadings and show there is a genuine issue of material fact for trial.  *Id.*

An issue of fact is genuine "'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'"

*Villiarmo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002)(quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The court must draw all reasonable inferences in favor of the nonmoving party. *Id.* A mere disagreement about a material issue of fact, however, does not preclude summary judgment. *Jackson v. Bank of Haw.*, 902 F.2d 1385, 1389 (9th Cir. 1990). When the nonmoving party's claims are factually implausible, that party must come forward with more persuasive evidence than otherwise would be required. *Blue Ridge Ins. Co. v. Stanewich*, 142 F.3d 1145, 1147 (9th Cir. 1998)(citation omitted).

The substantive law governing a claim or a defense determines whether a fact is material. *Addisu v. Fred Meyer, Inc.*, 198 F.3d 1130, 1134 (9th Cir. 2000). If the resolution of a factual dispute would not affect the outcome of the claim, the court may grant summary judgment. *Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 919 (9th Cir. 2001).

## **DISCUSSION**

Defendants move for summary judgment on the grounds that: (1) Plaintiff is not entitled to services for the mentally disabled, and Plaintiff has received all of the services to which he is entitled under the ADA and the Rehabilitation Act; (2) Defendants are not proper parties under the Rehabilitation

Act; (3) Plaintiff has not alleged facts that state a claim under Title VI of the Civil Rights Act of 1964; and (4) Or. Rev. Stat. §§ 144.223 and 144.125(3) and OAR 255-060-0012 do not violate Plaintiff's rights under the First, Fifth, Eighth, or Fourteenth Amendments to the United States Constitution.

**I.  Defendants Are Entitled to Summary Judgment on Plaintiff's Claims under the ADA and the Rehabilitation Act.**

Plaintiff alleges Or. Rev. Stat. §§ 144.223 and 144.125(3) and OAR 255-060-0012 violate the ADA and the Rehabilitation Act insofar as they address the phrase "present severe emotional disturbance."  Plaintiff also alleges Defendant Field is denying him access to "programs" to help Plaintiff "improve his mental condition" in violation of the ADA and the Rehabilitation Act.

**A.  Or. Rev. Stat. §§ 144.223 and 144.125(3) and OAR 255-060-0012 do not violate the ADA or the Rehabilitation Act.**

This Court rejected an argument similar to Plaintiff's argument in *Ford v. Washington*, CV 98-6141-RE (Opin. and Order issued May 2, 2000)(Redden, J.).  This Court reasoned:

> [I]t is apparent that [the applicable state] statutes say the Board can require prisoners to serve longer portions of their sentences if they have mental conditions that make them dangerous. The focus is on a quality of mind . . . that produces dangerousness or a predilection for violence or other harms.  The statutes address social qualities, not psychiatric illnesses or diseases.
>
> These statutes specifically do <u>not</u> say . . . that the Board can require prisoners to serve longer portions of their sentences if they are

> "mentally ill."  In fact, in 1979, the U.S.
> District Court for the District of Oregon found
> such an approach in the context of parole
> decisions to be in violation of the
> [Rehabilitation Act] . . . . Thereafter, in 1981,
> the Oregon legislature amended the parole statutes
> to conform to the [Court's] holding that if the
> board determined that the prisoner will be a
> danger to the health or safety of the community,
> it may postpone or deny parole.  But the board may
> not deny release on parole solely because of the
> prisoner's severe emotional disturbance.  There is
> a crucial difference between incarcerating
> individuals for their mental illnesses, and
> incarcerating them for their crimes and the mental
> conditions that make them dangerous to the health
> or safety of the community.

*Id.* at 7-8(emphasis in original).  In *Saunders v. John Kitzhaber*, CV 00-701-KI (Opin. and Order issued Feb. 21, 2001)(King, J.), this Court found the reasoning of *Ford* applied in the context of an inmate's allegation that he was denied parole on the basis of a disability in violation of the ADA.

In this case, the Court's reasoning in *Ford* and *Saunders* also is applicable.  Here the statutes and administrative rule at issue do not deny parole to inmates due to their mental illness, but only deny parole to inmates who are dangerous to the health and safety of the community.  In addition, these statues and administrative rule do not deny parole on the basis of a disability.

The Court, therefore, holds Or. Rev. Stat. §§ 144.223 and 144.125(3) and OAR 255-060-0012 do not violate the ADA or the Rehabilitation Act.

**B.   Plaintiff is not Entitled to Services under the ADA.**

Plaintiff alleges Defendants have violated Plaintiff's rights under the ADA by denying him services.  To establish that Defendants violated Plaintiff's rights pursuant to Title II of the ADA, 42 U.S.C. § 12132,[4] Plaintiff must show:

> (1)   [he is a] "qualified individual with a disability";
>
> (2)   [he was] either excluded from participation in or denied the benefits of a public entity's services, programs or activities, or was otherwise discriminated against by the public entity; and
>
> (3)   such exclusion, denial of benefits, or discrimination was by reason of [his] disability.

*Weinreich v. Los Angeles County Metro. Transp. Auth.*, 114 F.3d 976, 978 (9th Cir. 1997)(citing 42 U.S.C. § 12132 and *Does 1-5 v. Chandler*, 83 F.3d 1150, 1154-1155 (9th Cir.1996)), *cert. denied*, 118 S. Ct. 423 (1997).  The Ninth Circuit has held a mental impairment that causes a plaintiff to have severe problems in his relations with others on a regular basis, such as consistently high levels of hostility, social withdrawal, or failure to communicate when necessary, may constitute a disability for purposes of the ADA.  *See McAlindin v. County of San Diego*, 192 F.3d 1226, 1235 (9th Cir. 1999), *amended on denial of reh'g by* 201 F.3d 1211 (9th Cir. 2000).

---

[4] Although Plaintiff refers to denial of "programs" by the Board of Parole and does not state specifically that he is bringing his claim under Title II of the ADA, the Court interprets his claim as brought under Title II of the ADA.

The psychological evaluations of Plaintiff by Drs. Stuckey and Colistro suggest Plaintiff has high levels of hostility and trouble interacting with people.  Plaintiff may have a disability under the ADA, but the reports of Drs. Stuckey and Colistro also indicate Plaintiff has received considerable psychological and vocational training at OSP.  In addition, Plaintiff does not identify any specific services allegedly denied to him geared towards his improvement and rehabilitation.

Accordingly, the Court concludes Defendants are entitled to summary judgment on Plaintiff's claims that Defendants violated Plaintiff's rights under the ADA by excluding him from participating in or denying him "the benefits of a public entity's services, programs or activities."

**C. Defendants Are Not Proper Parties under the Rehabilitation Act.**

Plaintiff also alleges Defendants have violated Plaintiff's rights under the Rehabilitation Act by denying him services.  Section 504 of the Rehabilitation Act provides in pertinent part:

> No otherwise qualified individual with a disability in the United States, as defined in section 705(20) of this title, shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance

29 U.S.C. § 794(a).

To establish that Defendants violated Plaintiff's rights pursuant to § 504 of the Rehabilitation Act, Plaintiff must show: (1) he is an individual with a disability; (2) he is otherwise qualified to participate in or receive the benefit of a public entity's services, programs, or activities; (3) Defendants either excluded him from participation in or denied him the benefits of the public entity's services, programs, or activities; and (4) he was excluded or denied benefits because of his disability. *Thompson v. Davis*, 295 F.3d 890, 895 (9th Cir. 2002)(citing *Weinreich v. L.A. County Metro. Transp. Auth.*, 114 F.3d 976, 978 (9th Cir. 1997)).

In this case, Defendants are individuals rather than entities that receive federal funds, and, therefore, they are not proper defendants under the Rehabilitation Act. *See Evans v. State of Oregon*, CV 01-642-BR (Opin. and Order Sept. 28, 2001)(Brown, J.).

In addition, for the same reasons applicable to Plaintiff's claim under the ADA, the Court finds Plaintiff has not shown he has been excluded from "participation in [or] denied the benefits of . . . any program or activity receiving Federal financial assistance" in violation of the Rehabilitation Act.

Accordingly, the Court concludes Defendants are entitled to summary judgment on this issue.

## II. Plaintiff Has Not Stated a Claim Under Title VI of the Civil Rights Act.

Title VI of the Civil Rights Act of 1964 provides in pertinent part: "No person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 42 U.S.C. § 2000d. Plaintiff, however, does not make any allegations that he was denied services on the basis of his race, color, or national origin.

Accordingly, the Court concludes Defendants are entitled to summary judgment on this issue.

## III. Defendants are Entitled to Summary Judgment on Plaintiff's Claim that the Oregon Statutes and the Administrative Rule at Issue Violate his Rights under the First, Fifth, Eighth and Fourteenth Amendments pursuant to § 1983.

Pursuant to § 1983, Plaintiff alleges Defendants violated his constitutional rights by complying with Or. Rev. Stat. §§ 144.223 and 144.125(3) and OAR 255-060-0012.

### A.   § 1983 Standards Generally

An individual whose federal constitutional rights have been violated by a public official acting under color of state law may sue the official for damages pursuant to 42 U.S.C. § 1983. *Orin v. Barclay*, 272 F.3d 1207, 1214 (9th Cir. 2001).

### B.   First Amendment

Plaintiff alleges Or. Rev. Stat. § 144.223 violates his First Amendment right of free speech because it compels him to

participate in a psychological evaluation in order to be
considered for parole.

A plaintiff asserting a violation of his First
Amendment right of free speech must establish three elements:
(1) Plaintiff was engaged in constitutionally protected free
speech activity, (2) Defendants' actions caused an injury "that
would chill a person of ordinary firmness from continuing in that
activity," and (3) Defendants specifically intended to inhibit
Plaintiff's constitutionally protected speech. *See Mendocino
Env't Ctr. v. Mendocino County,* 192 F.3d 1283, 1300-01 (9th Cir.
1999).

Here Plaintiff fails to identify any constitutionally
protected free-speech activity that he engaged in or that
Defendants specifically intended to inhibit.  Instead Plaintiff
contends he did not want to participate in an evaluation, but he
was required to do so by Or. Rev. Stat. § 144.223 in order to be
considered for parole.  Thus, the Court finds Plaintiff's
allegation does not implicate the First Amendment, and,
therefore, Or. Rev. Stat. § 144.223 does not violate Plaintiff's
First Amendment right to free speech. *See Lovelace v. Bd. of
Parole and Post-Prison Supervision*, 188 Or. App. 432, 72 P.2d 118
(2003)(rejecting without discussion the plaintiff's allegation
that Or. Rev. Stat. § 144.223 violates the "provisions pertaining
to free expression" of both the Oregon and United States

Constitutions).

Accordingly, the Court concludes Defendants are entitled to summary judgment on this issue.

### C.    **Fifth Amendment**

Plaintiff contends Or. Rev. Stat. § 144.223 compels him to participate in a psychological evaluation and, therefore, violates his Fifth Amendment right not to incriminate himself.

In *McCall v. Pataki*, the plaintiff, an inmate proceeding *pro se*, alleged his hearing before the New York State Parole Board violated his Fifth Amendment right to be free of self-incrimination because he had "to indicate that [he] committed the crimes for which [he had been] accused . . . and sentenced in order to be approved for parole."  232 F.3d 321, 323 (2d Cir. 2000).  The Second Circuit Court of Appeals held the plaintiff did not state a claim because he "had already been convicted and sentenced with respect to the crime of which he was asked to speak, [and, therefore,] he had no right to refuse to answer on the ground of self-incrimination."  *Id*. (citing *Mitchell v. United States*, 526 U.S. 314, 326 (1999)(in "cases in which the sentence has been fixed and the judgment of conviction has become final, . . . there is no further incrimination to be feared," and, therefore, "no basis for assertion of the privilege.")).

Here, as in *McCall*, Plaintiff's psychological

evaluation involved questions regarding only the crimes for which he already had been convicted. Plaintiff does not allege, and the evidence does not show, the evaluations included questions regarding crimes for which Plaintiff had not been convicted. The Court, therefore, finds Plaintiff has not demonstrated Or. Rev. Stat. § 144.223 violates his Fifth Amendment right not to incriminate himself. *See Lovelace v. Bd. of Parole and Post-Prison Supervision*, 188 Or. App. 432, 72 P.2d 118 (2003) (rejecting without discussion the plaintiff's allegation that Or. Rev. Stat. § 144.223 violates the "provisions . . . protecting against compelled self-incrimination" of both the Oregon and United States Constitutions).

Accordingly, the Court concludes Defendants are entitled to summary judgment on this issue.

### D. Eighth Amendment

Plaintiff alleges Or. Rev. Stat. §§ 144.223 and 144.125(3) and OAR 255-060-0012 violate his Eighth Amendment right to be free of cruel and unusual punishment.

The Supreme Court has held prisoners have no constitutional right to be released before completion of their lawful sentences. *Greenholtz v. Inmates of Nebraska Penal and Correctional Complex*, 442 U.S. 1, 7 (1979). Thus, even if Defendants caused Plaintiff to be held longer than his release date, Defendants' conduct would constitute cruel and unusual

punishment only if Defendants acted with "deliberate indifference" to Plaintiff's liberty interest. *See Haygood v. Younger*, 769 F.2d 1350, 1355 (9th Cir. 1985).

Or. Rev. Stat. §§ 144.223 and 144.125(3) and OAR 255-060-0012 require the Board to balance Plaintiff's potential danger to the public with his eligibility for parole. Thus, these Oregon statutes and administrative rule require the Board to consider Plaintiff's liberty interest, and, therefore, do not permit the Board to act with deliberate indifference. Accordingly, the Court concludes Or. Rev. Stat. §§ 144.223 and 144.125(3) and OAR 255-060-0012 do not violate Plaintiff's Eighth Amendment rights, and Defendants are entitled to summary judgment on this issue.

**E. Fourteenth Amendment**

Plaintiff contends Or. Rev. Stat § 144.125(3) and OAR 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 are unconstitutionally vague and violate Plaintiff's rights under the Due Process Clause of the Fourteenth Amendment because the phrase "present severe emotional disturbance" is arbitrary and neither the Board nor the legislature have established criteria to determine the criteria for a "present severe emotional disturbance."

It is well-settled that "[t]he Due Process Clause contains a substantive component that bars certain arbitrary, wrongful government actions 'regardless of the fairness of the

procedures used to implement them.'" *Zinermon v. Burch*, 494 U.S. 113, 125 (1990)(quoting *Daniels v. Williams*, 474 U.S. 327, 331 (1986)).

As noted, a prisoner does not have a constitutional right to be conditionally released before the expiration of a valid sentence. *Greenholtz*, 442 U.S. at 7. Because a parole decision "is not part of a criminal prosecution, the full panoply of rights due a defendant in such a proceeding is not constitutionally mandated, even when a protected liberty interest exists." *Pedro v. Oregon Parole Bd.*, 825 F.2d 1396, 1399 (9th Cir. 1987). *See also Jancsek v. Oregon Bd. of Parole*, 833 F.2d 1389, 1390 (9th Cir. 1987); *Greenholtz*, 442 U.S. at 12 (due process is flexible and calls for the procedural protections demanded by the particular situation). The Court in *Greenholtz* found the Nebraska parole procedure satisfied due process because it "affords an opportunity to be heard, and when parole is denied it informs the inmate in what respects he falls short of qualifying for parole." 442 U.S. at 16.

Here, even assuming an Oregon prisoner has a protected liberty interest in the Board's decision, Plaintiff received all of the process he was due. Plaintiff had the opportunity to be heard, and the Board provided Plaintiff with an explanation for the Board's deferral of his parole-release date. *See Greenholtz*, 442 U.S. at 16. In addition, Plaintiff received advance notice

of the hearings, had access to the materials considered by the Board, and could submit his own materials for consideration by the Board. *See Pedro*, 825 F.2d at 1399. Finally, Plaintiff had the benefit of two psychological evaluations by different psychologists. Under the circumstances, the Court finds Plaintiff received adequate due process pursuant to *Greenholtz* and *Pedro*.

Accordingly, the Court concludes Defendants did not violate Plaintiff's rights under the Due Process Clause of the Fourteenth Amendment, and, therefore, Defendants are entitled to summary judgment on this issue.

### **F. Defendant Stuckey is Immune from liability for Damages under § 1983**

Court-appointed psychiatrists who prepare and submit medical reports to the state court are immune from liability for damages under § 1983. *Burkes v. Callion*, 433 F.2d 318, 319 (9th Cir. 1970), *cert. denied*, 403 U.S. 908 (1971). Defendant Stuckey, a Board-appointed psychiatrist, like a court- appointed psychiatrist, has absolute quasi-judicial immunity for preparing and submitting to the Board a psychiatric report regarding Plaintiff.

Accordingly, Defendant Stuckey is entitled to summary judgment on Plaintiff's claim for damages against him.

**CONCLUSION**

For these reasons, the Court **GRANTS** Defendants' Motion for Summary Judgment (#87) and **DENIES** Plaintiff's Motion for Summary Judgment (#102).

IT IS SO ORDERED.

DATED this 27th day of June, 2005.


/s/ Anna J. Brown

_____
ANNA J. BROWN
United States District Judge

Howard CV02-6255 O&O 06-27-05.wpd